**UNITED STATES of America**

v.

**David BARISH and Louis Reaback.**

**UNITED STATES of America**

v.

**David BARISH and Joseph F. Walker.**

**Civ. A. Nos. 18288, 18291.**

United States District Court
E. D. Pennsylvania.
June 8, 1962.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., for plaintiff.

Milton Jacobson, Norristown, Pa., for David Barish.

John Stewart, Jr., Raspin, Espenshade, Heins, Erskine & Stewart, Philadelphia, Pa., for Louis Reaback.

Joseph F. Walker, pro se.

GANEY, Circuit Judge.*

The Court makes the following Findings of Fact and Conclusions of Law in the above mentioned matters:

1. The two actions are suits for liquidated damages under the Surplus Property Act of 1944, 50 U.S.C.A.Appendix, § 1635(b), of which the Court has jurisdiction under Section 26(c), 50 U.S.C.A. Appendix, § 1635(c), which was repealed and re-enacted as Section 209(b) and (c) of the Federal Property and Administrative Services Act of 1949, 40 U.S.C. A. § 489(b) and (c).

2. The defendant, Louis Reaback, received an honorable discharge from the United States Army on December 1, 1945.

3. The defendant, David Barish, is a non-veteran who bought, sold and repaired used cars and trucks, doing business on Parrish Street, Philadelphia, Pennsylvania.

4. About a month after Reaback was discharged from the service, Barish told him that he would pay him $50 for every vehicle purchased by him from government surplus property with a veteran's preference certificate.

5. Barish advised Reaback to make application for a veteran's preference certificate at the War Assets Administration. He also instructed Reaback that when he filled out his application he was to advise the War Assets Administration that he was going to use the vehicles in a dry goods business which he was about to engage in. Reaback had no intention of engaging in a dry goods business in the future.

6. Reaback, on January 30, 1946, applied for veteran's certificates to purchase three delivery trucks. In his application he stated in writing, as he had been instructed by Barish, that the trucks were to be used in the dry goods business which he intended to enter on February 10, 1946. This statement was false and was made for the purpose of obtaining the veteran's preference certificates and both Reaback and Barish knew it to be both false and fraudulent.

7. Reaback, having received the veteran's certificates, pursuant to his application, on March 18, 1946, went with Barish to a sale of surplus government vehicles at the Holabird Automotive Pool near Baltimore, Maryland, which sale was open only to veterans who possessed veteran's certificates. At that sale, Barish selected three army trucks for purchase and gave Reaback the money, in cash, to make the purchases for him with the veteran's certificates.

8. On or about March 20, 1946, with his veteran's certificates, Reaback purchased for Barish at the Holabird Automotive Pool the following trucks at the prices shown:

| ITEM | PRICE |
|---|---|
| GMC 2 ½ ton truck, van, serial No. 173154-1 | $1,288.00 |
| GMC 2 ½ ton truck, van, serial No. 173173-1 | 1,288.00 |
| GMC 2 ½ ton truck, van, serial No. 170427-1 | 1,288.00 |
| TOTAL | $3,864.00 |

9. Reaback signed the title certificates for the trucks in his name and then delivered the trucks and titles to Barish. In return for the part he played in obtaining the trucks with the aid of the veteran's preference certificates, Reaback

---

* Specially designated to sit in the District Court.

received a consideration of $150 from Barish.

10. The defendant, Joseph F. Walker, was a veteran who received an honorable discharge from the United States Army.

11. Walker, on December 20, 1945, submitted an application to the War Assets Administration for the purchase of government surplus vehicles. In his application, he stated that he needed them for his junk business. This statement was false and was made for the purpose of obtaining the veteran's preference certificates and was known to be false by Walker because he was not in the junk business.

12. Walker then met Barish at a surplus government property sale outside the Philadelphia Navy Yard, where Barish offered him $50 for his veteran's preference certificate, which Barish indicated he would use at a sale in Baltimore, Maryland.

13. Walker advised Barish that he had obtained the certificates by an application containing false statements. However, Barish told him that the authorities would do nothing to him by reason of such statements.

14. In January of 1947, Walker and Barish attended a sale of surplus government vehicles at Letterkenny Ordnance Depot, Chambersburg, Pa. The first few days of the sale were restricted to veterans who possessed priority certificates. During the sale, Barish selected ten vehicles to be purchased by Walker and gave him $5,969.00 in cash to make the purchases. The vehicles purchased by Walker for Barish on January 3, 1947, were the following:

| ITEM | PRICE |
|---|---|
| Truck, 1 ½ Ton Ford, V8, 1941 Serial #99T-464362, Eng. #99T464362 | $ 527.00 |
| Truck, 1 ½ Ton Ford 1943 Serial #G8T-168362, Eng. #G8T168362 | 635.00 |
| Truck, 1 ½ Ton Ford 1941 Serial #82489, Eng. #82489 | 514.00 |
| Truck, 1 ½ Ton Ford 1942 Serial #1GT-121224, Eng. #1GT-121224 | 692.00 |
| Truck, 1 ½ Ton Ford 1943 Serial #G8T-178674, Eng. #G8T-178674 | 698.00 |
| Truck, 1 ½ Ton Ford 1941 Serial #99T-461291, Eng. #99T-461291 | 559.00 |
| Truck, 1 ½ Ton Ford 1941 Serial #77627, Eng. #77627 | 519.00 |
| Truck, 1 ½ Ton Ford 1943 Serial #143014, Eng. #143014 | 668.00 |
| Truck, 1 ½ Ton Ford 1943 Serial #G8T-153739, Eng. #G8T-153739 | 634.00 |
| Truck, 1 ½ Ton Ford 1941 Serial #99T526202, Eng. #99T52602 | 523.00 |
| TOTAL | $5,969.00 |

15. The sales on January 3, 1947, were limited to veterans with priority certificates. Absent the veteran's priority certificate issued to Walker, he could not have made the purchases.

16. Barish paid Walker $100 plus expenses during his attendance at the sale for the use of his veteran's priority certificate, as well as for his services in driving two of the vehicles from the

place of sale to Philadelphia, Pennsylvania.

17. On December 21, 1956, judgment by default was entered in favor of the plaintiff and against Walker, and damages assessed in the sum of $13,318.00 plus interest.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and subject matter of this action.

2. The defendants used or engaged in, or caused to be used or engaged in, a fraudulent trick, scheme or device for the purposes of receiving or obtaining, or aiding to receive or obtain, surplus property from the United States, and as a result of such action were successful in obtaining priority surplus property from the United States to which they were not entitled, all in violation of the Surplus Property Act of 1944, and regulations promulgated thereunder.

3. In Civil Action No. 18,288, plaintiff is entitled to recover from the defendant, David Barish and Louis Reaback, jointly and severally, the sum of $7,728.00 plus costs.

4. In Civil Action No. 18,291, plaintiff is entitled to recover from the defendant, David Barish, the sum of $11,938.00 plus costs.

## DISCUSSION

This matter needs little discussion as, in both instances, it is quite apparent from the record that David Barish was the one who promoted, managed and controlled both transactions the Reaback matter, as well as the Walker matter.

In the first transaction, Civil Action No. 18,288, it is clear that Reaback visited Barish's place of business in the 1500 block of Parrish Street, Philadelphia, about a month after he was discharged from the Army. Reaback learned that Barish was paying $50 for a veteran's priority certificate and, at Barish's suggestion, Reaback went to the War Assets Administration and made application for a certificate. At Barish's further suggestion, Reaback was told to state he was going to use the vehicles to enter the dry goods business, retail and wholesale, on February 10, 1946. This whole transaction was a false and fraudulent one since Reaback, as Barish well knew, had no intention of going into business. Having received the certificate, about March 18, 1946, Reaback, together with Walker, went to the Holabird Pool near Baltimore, Maryland, and there Barish selected three 2½ ton vehicles which Reaback purchased for him with $7,628.00 supplied by Barish. The veteran's certificate was surrendered at the same time. Here, it is very obvious that Reaback was not acting as an established dealer, nor was he such for the purpose of the re-sale.

The same situation is applicable in Civil Action No. 18,291, where almost the identical procedure was followed and where Barish went with the defendant, Joseph F. Walker, to the Letterkenny Ordnance Depot, Chambersburg, Pennsylvania, where a sale was in progress for approximately two weeks, during which time Barish paid all the expenses of Walker and at the fixed price sale restricted to veterans who possessed priority certificates, Walker received $5,969.00 from Barish to make purchase of the vehicles he wanted, Walker having falsely said he was in the junk business. These vehicles, likewise, could not have been purchased if Walker did not have a veteran's certificate.

While the plaintiff asked for recovery under Subsection 26(b) (1) of the Surplus Property Act of 1944, we feel that since the complaint restricts the damages to twice the amount of the sales price, it is submitted that the plaintiff is here entitled, in Civil Action No. 18,288, to the sum of $7,728.00, and, in Civil Action No. 18,291, to $11,938.00.